# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEQUILA KIHENJO,<br><br>              Plaintiff,<br><br>   v.<br><br><br>TENNECO INC., ROY V. ARMES, THOMAS C. FREYMAN, DENISE GRAY, BRIAN J. KESSELER, MICHELLE A. KUMBIER, DENNIS J. LETHAM, JAMES S. METCALF, ALEKSANDRA A. MIZIOLEK, CHARLES K. STEVENS, III, JOHN S. STROUP, and JANE L. WARNER,<br><br>              Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Tequila Kihenjo ("Plaintiff") by and through Plaintiff's undersigned attorneys, brings this action on behalf of Plaintiff, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Tenneco Inc. ("Tenneco" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Tenneco and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Tenneco and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and affiliates of Apollo Global Management, Inc. ("Apollo").

2. On February 22, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Pegasus Holdings III, LLC ("Parent'), and Pegasus Merger Co. ("Merger Sub"), a wholly owned subsidiary of Parent. Parent and Merger Sub are both affiliates of certain funds managed by Apollo. Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into Tenneco, with Tenneco surviving the merger as a wholly owned subsidiary of Parent. As a consequence of the merger, the Company's shareholders will receive $20.00 in cash for each share of Tenneco common stock they own (the "Merger Consideration").

3. On April 26, 2022, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Tenneco and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule

14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tenneco shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Tenneco shares.

9. Defendant Tenneco is incorporated under the laws of Delaware and has its principal executive offices located at 7450 N. McCormick Blvd., Skokie, Illinois 60076. The Company's common stock trades on the New York Stock Exchange under the symbol "TEN."

10. Defendant Roy V. Armes ("Armes") is and has been a Tenneco director at all times during the relevant time period.

11. Defendant Thomas C. Freyman ("Freyman") is and has been a Tenneco director at all times during the relevant time period.

12. Defendant Denise Gray ("Gray") is and has been a Tenneco director at all times during the relevant time period.

13. Defendant Brian J. Kesseler ("Kesseler") is and has been the Chief Executive Officer ("CEO") and a director of Tenneco at all times during the relevant time period.

14. Defendant Michelle A. Kumbier ("Kumbier") is and has been a Tenneco director at all times during the relevant time period.

15. Defendant Dennis J. Letham ("Letham") is and has been a Tenneco director at all times during the relevant time period.

16. Defendant James S. Metcalf ("Metcalf") is and has been a Tenneco director at all times during the relevant time period.

17. Defendant Aleksandra A. Miziolek ("Miziolek") is and has been a Tenneco director at all times during the relevant period.

18. Defendant Charles K. Stevens, III ("Stevens") is and has been a Tenneco director at all times during the relevant time period.

19. Defendant John S. Stroup ("Stroup") is and has been a Tenneco director at all times during the relevant time period.

20. Defendant Jane L. Warner ("Warner") is and has been a Tenneco director at all times during the relevant time period.

21. Defendants Armes, Freyman, Gray, Kesseler, Kumbier, Letham, Metcalf, Miziolek, Stevens, Stroup, and Warner are collectively referred to herein as the "Individual Defendants."

22. The Individual Defendants, along with Defendant Tenneco, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. Tenneco designs, manufactures, and sells clean air, and powertrain products and systems for light vehicle, commercial truck, off-highway, industrial, motorsport, and aftermarket customers worldwide. It operates through four segments: Motorparts, Performance Solutions, Clean Air, and Powertrain. The Motorparts segment offers shock and strut, steering and suspension, braking, sealing, emissions control, engine, and maintenance products under the Monroe, Champion, Öhlins, MOOG, Walker, Fel-Pro, Wagner, Ferodo, Rancho, Thrush, National, Sealed Power, and other brands. The Performance Solutions segment designs, manufactures, markets, and distributes noise, vibration, and harshness performance materials; advanced suspension technologies; and ride control, braking, and systems protection products. The Clean Air segment offers catalytic converters and diesel oxidation catalysts; diesel particulate filters; burner systems; lean nitrogen oxide (NOx) traps; selective catalytic reduction (SCR) systems; hydrocarbon vaporizers and injectors; SCR-coated diesel particulate filters systems; urea dosing systems; four-way catalysts; alternative NOx reduction technologies; mufflers and resonators; fabricated exhaust manifolds; pipes; hydroformed assemblies; elastomeric hangers and isolators; and aftertreatment control units. The Powertrain segment provides pistons, piston rings, piston pins, cylinder liners, valvetrain products, valve seats and

5

guides, ignition products, dynamic seals, bonded piston seals, combustion and exhaust gaskets, static gaskets and seals, engine bearings, industrial bearings, and bushings and washers. The Company was formerly known as Tenneco Automotive Inc. and changed its name to Tenneco Inc. in 2005.

## The Company Announces the Proposed Transaction

24. On February 23, 2022, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> LAKE FOREST, Ill., Feb. 23, 2022 /PRNewswire/ -- Tenneco (NYSE: TEN) announced today it has entered into a definitive agreement to be acquired by funds managed by affiliates of Apollo (NYSE: APO) (the "Apollo Funds") in an all-cash transaction with an enterprise valuation of approximately $7.1 billion, including debt.
>
> The purchase price of $20.00 per share represents a 100.4% premium over the Company's closing share price of $9.98 on February 22, 2022 and a 71.6% premium over the Company's unaffected 90-day VWAP. Upon completion of the transaction, Tenneco's shares will no longer trade on the New York Stock Exchange, and Tenneco will become a private company. Tenneco will continue to operate under the Tenneco name and brand and maintain a global presence.
>
> "We are pleased to have reached this agreement with Apollo, which we believe will deliver immediate and certain cash value to Tenneco shareholders at a substantial premium," said Dennis Letham, Chairman of the Board of Tenneco. "The Board's decision follows careful evaluation of the transaction and thoughtful and comprehensive review of value creation opportunities for Tenneco. We believe this transaction is the right path forward and achieves our goal of maximizing value for Tenneco shareholders, and will benefit our team members, customers and business partners around the world."
>
> "Over the last several years, Tenneco has transformed its business to succeed in today's environment. This transaction marks a significant milestone and will provide us with a new and exciting platform from which we can continue our global strategy in an evolving and dynamic mobility landscape," said Brian Kesseler, Tenneco's chief executive officer. "In Apollo, we have a partner that recognizes the strength of our product portfolio and our ability to serve leading OEM and aftermarket blue-chip customers globally. Specifically, this partnership will allow us to continue to invest in and grow Tenneco's multiple segments and global footprint. This transaction is also a testament to the achievements of our

global team, whose commitment and focus during these extraordinary times have enabled our success."

Apollo Partner Michael Reiss said, "Tenneco is a key solutions provider for global mobility markets with a long-held commitment to innovation and high-quality service. We look forward to working with the Tenneco team to build on the strong foundation in place today, investing across their platform and product categories for growth and delivering innovative solutions for customers."

**Approvals and Timing**

The transaction, which has been unanimously approved by the Tenneco Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Tenneco shareholders and receipt of regulatory approvals. The transaction is not subject to a financing condition.

**Fourth Quarter and Full-Year 2021 Results**

In a separate press release, Tenneco today announced its financial results for the fourth quarter and fiscal year ended December 31, 2021, which is accessible by visiting the Investor Relations section of the Tenneco corporate website at Investors | Tenneco Inc. In light of the announced transaction with Apollo, Tenneco has cancelled the earnings conference call previously scheduled for February 24.

**Advisors**

Lazard is serving as financial advisor to Tenneco, and Latham & Watkins LLP is acting as legal counsel.

Rothschild & Co acted as lead financial advisor to the Apollo Funds on the transaction. BofA Securities and Citi also acted as financial advisors to the Apollo Funds. Wachtell, Lipton, Rosen & Katz is serving as legal counsel and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as financing counsel to the Apollo Funds.

## FALSE AND MISLEADING STATEMENTS

## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

25.     On April 26, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

26.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

27.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

28.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

29. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

30. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Value Added Revenue; (ii) EBITDA; (iii) Free Cash Flow; and (iv) Unlevered Free Cash Flow.

31. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Lazard's Financial Opinion**

32. The Proxy Statement contains the financial analyses and opinion of Lazard Fréres & Co. LLC ("Lazard") concerning the Proposed Transaction, but fails to provide material information concerning such.

33. With respect to Lazard's *Comparable Public Companies Analysis*, the Proxy Statement fails to disclose the individual metrics for each of the companies observed in the analysis.

34. With respect to Lazard's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the closing dates for each transaction; and (ii) the total values of each transaction.

9

35. With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) all line items used to calculate the unlevered, after-tax free cash flows that the Company was forecasted to generate during calendar years 2022 through 2026; (ii) the Company's range of implied terminal values; (iii) the inputs and assumptions underlying Lazard's selected range of exit multiples of 4.0x to 5.0x; (iv) the inputs and assumptions underlying Lazard's use of a discount rate range of 10.5% to 11.5%; and (v) the Company's weighted average cost of capital.

36. With respect to Lazard's *Leveraged Buyout Return Analysis*, the Proxy Statement fails to disclose: (i) the inputs underlying Lazard's assumption of a five-year investment period; (ii) the inputs and basis underlying Lazard's use of target internal rates of return ranging from 15% to 20%; (iii) the inputs and basis underlying Lazard's assumption of a total leverage a closing of 4.2x 2021 EBITDA; and (iv) the inputs and basis underlying Lazard's assumption of an exit multiple of 4.0x to 5.0x.

37. With respect to Lazard's *Broker Target Prices* analysis, the Proxy Statement fails to disclose: (i) the brokers observed; and (ii) the corresponding price targets observed.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Tenneco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tenneco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 17, 2022

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*